IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH M. FURKA,** | ) | |
| | ) | |
| Plaintiff, | ) | 2:06-cv-875 |
| v. | ) | |
| | ) | |
| **UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION,** | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court is the MOTION FOR SUMMARY JUDGMENT *(Document No. 14),* with brief in support, filed by Defendant University of Pittsburgh of the Commonwealth System of Higher Education (the "University"). Plaintiff, Deborah Furka, has filed a brief in opposition and a counter-statement of facts (*Document Nos. 19, 20*), the University has filed a reply brief and supplement (*Document Nos. 22, 23*), both parties have submitted numerous exhibits, and the motion is ripe for disposition.

Factual and Procedural Background

Plaintiff initially filed a claim with the Equal Employment Opportunity Commission (EEOC) which alleged discrimination on the basis of age, gender and a hostile work environment. The Amended Complaint asserts claims for discrimination based on gender and race under Title VII, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 955. The parties now agree that the sole remaining claim of Plaintiff is that she was wrongfully terminated due to her race.

Furka was employed by the University from 1998 through January 4, 2006. She was initially hired as Chief of Police/Director of Public Safety and her prior experience has been in law enforcement. In October 2003, Dr. Jack Daniel, the Vice Provost for Undergraduate Studies and Dean of Students, hired Furka as Director of Residence Life, reporting to him as part of the Division of Student Affairs. Furka's duties included fostering a culture of community within the residence halls and within the department, building collaborative partnerships with other University departments, including Housing and Judicial Affairs, managing administrative personnel, and providing a quality living/learning environment for students and residents.

In April 2005, Dr. Daniel received confidential staff evaluations from Furka's subordinates. Defendant Exhibits 18-28; Plaintiff Exhibits E-I. Although the evaluations contain a broad spectrum of comments and ratings, Plaintiff admits that some of the evaluations were negative. There were numerous categories in which Furka was rated as a "5", the lowest possible score on the 1-5 scale. In addition, many employees made unfavorable written comments regarding Furka's performance.

Both of the Assistant Directors who reported directly to Furka, and worked closely with her, gave her an overall rating of "consistently below expectations." Assistant Director Kathleen Kyle, who had a good working relationship with Furka, spent significant time drafting her evaluation and provided numerous specific criticisms of Furka's performance and leadership style. Statement of Facts ¶ 72. Plaintiff does not believe that Kyle discriminated against her based on her race. Assistant Director Deborah Walker also completed a lengthy evaluation with numerous specific criticisms of Furka's performance. Statement of Facts ¶ 79. Plaintiff contends that Walker harbored animosity toward Furka because of discipline she had received for

2

having lost a set of master keys. Both Assistant Directors declined to have their evaluations presented to Furka due to fear of retaliation. Dr. Daniel informed Furka that he was concerned about some of the staff evaluations of her.

Effective July 1, 2005, the University hired Dr. Kathy Humphrey as Vice Provost and Dean of Students to replace Dr. Daniel. Dr. Humphrey is an African-American woman, with 25 years of experience in student affairs. Furka is caucasian. As a result of Dr. Humphrey's background in student affairs, she came to the University with strong opinions concerning the skill set she would require of her top management team, including the Director of Residence Life.

Upon arriving at the University, Dr. Humphrey learned of problems with, and complaints about, Furka from many different sources. She also discussed the staff evaluations of Furka with Dr. Daniel. The evaluations caused concern for Dr. Humphrey because they contained many substantive criticisms, many of which were recurring themes throughout several evaluations. In her first meeting with Furka, Dr. Humphrey informed her that concerns about her management style had been raised. Dr. Humphrey testified that she did not take the evaluations at face value, but tried to verify the information by listening to the people who worked with Furka. Plaintiff points out that Dr. Humphrey also testified that she was rarely in the Residence Life Department and had little personal observation of Furka, and that Humphrey did not meet with most of the actual employees about the comments in their staff evaluations.

Assistant Directors Kyle and Walker both informed Dr. Humphrey of their concerns about Furka's performance. Kyle, a caucasion woman, described Furka as creating a hostile work environment for many of the staff. Walker, an African-American woman, reported that

Furka had a "toxic management style." Sara McGee, Director of the University Student Judicial System and a causasian female, told Dr. Humphrey that she did not want to work with Furka. James Earle, a caucasian male and the University's Director of Housing, raised concerns to Dr. Humphrey about Furka's conduct and uncooperative attitude.[1]  However, Furka does not believe that Earle discriminated against her based on her race.  It is crucial for there to be a positive, collaborative working relationship between the departments of Residence Life and Housing, as they must work closely together every day.  Under Furka, the relationship between those departments was strained and difficult.  Dr. Humphrey was very concerned about Furka's inability to form collaborative relationships.

In August 2005, Dr. Shawn Brooks, a caucasian male, was hired as Assistant Director of Residence Life.  Dr. Brooks found that there was a "culture of fear" affecting people within the department of Residence Life and everyone from the assistant directors on down to the support staff expressed concern to him about Furka.  Dr. Brooks witnessed Furka screaming at her assistant and heard Furka yell at Walker on several occasions.  A number of directors of other departments made unsolicited and disparaging comments to Brooks about Furka.  Brooks informed Humphrey of these complaints, focusing on several recurring themes such as harsh management style, ineffective collaboration, and lack of knowledge of Student Affairs.

Dr. Humphrey was disappointed with Furka's performance on the tasks of creating a Sophomore Year Experience program and other programs within the residence halls.  Dr.

---

[1] Plaintiff admits that Earle's affidavit reflects this information, but nevertheless disputes this statement of fact, contending that Earle characterized his relationship with Furka as "very cohesive" in a November 17, 2005 email. Plaintiff does not appear to contest the fact that a meeting occurred in which Earle expressed concerns to Dr. Humphrey about Furka.

Humphrey felt that because of Furka's lack of experience, she did not know how to execute the creation of programs or to meet Humphrey's goals for the department, insofar as none of the programs existing in Residence Life when Dr. Humphrey arrived were up to her standards. Plaintiff contends that she was not given proper guidance regarding the expectations for the Sophomore Year Experience project and was not given a fair chance to succeed because Humphrey stepped in and took the project back after just two weeks.

In October 2005, it was discovered that the University had incorrectly calculated reports required by the Clery Act. Furka believed that both she and Walker should have accepted responsibility for the miscalculation. On December 9, 2005, Humphrey stated that she "remained extremely concerned" about Furka's actions and that the fact that Furka did not know the correct method of reporting was "unacceptable" and reflected poorly on her leadership ability and decision-making.

By sometime in November or December, 2005, Dr. Humphrey decided to terminate Furka. Humphrey was the sole decision-maker. Furka's management style and inability to form collaborative relationships was a major factor in the decision. The staff evaluations which had been completed in the summer of 2005 and Furka's subsequent performance led to Humphrey's belief that Furka lacked expertise in the area of student affairs. Humphrey did not document any formal coaching sessions or inform Furka that she was receiving formal discipline, or place anything in Furka's personnel file prior to the decision to terminate her employment. Humphrey decided to terminate Furka after the year-end holidays and semester break, on January 4, 2006. Furka was replaced by Brooks. Plaintiff has neither knowledge nor evidence of any comparable person who was treated better than she because of race.

Standard of Review

>   Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:
>
>   [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

>   The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

Legal Analysis

Race discrimination claims are analyzed under the familiar McDonnell-Douglas burden-shifting framework. If Plaintiff can make out a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action, and if so articulated, the burden shifts back to Plaintiff to demonstrate that the employer's stated reason was pretextual. The parties agree that this is a "pretext" case – there is no direct evidence of discrimination, Plaintiff can make out a prima facie case, and the University has articulated a legitimate non-discriminatory reason for the termination. The same legal standards govern the Title VII and PHRA claims, which will be addressed collectively.

The United States Court of Appeals for the Third Circuit has clearly and repeatedly explained that it is not the role of the courts to second-guess the wisdom, prudence or

7

competence of the employer's decision. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Plaintiff cannot merely show that the employer's decision was wrong or mistaken, but rather, must demonstrate that the decision was motivated by discriminatory animus. *Id.* Plaintiff's evidence must allow a reasonable factfinder to infer that each of the employer's proffered legitimate, non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action. *Id.* at 764. In other words, Furka "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence." *Id.* at 765; *Accord Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997) (Plaintiff "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."); *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)("principles explained in *Fuentes* [] require plaintiffs to present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision."). In *Riding v. Kaufmann's Dept. Store*, 220 F. Supp.2d 442, 461 (W.D. Pa. 2002), the Court, in an analogous situation, concluded that the plaintiff had failed to show pretext where the decision to demote her was based on the employer's perception of her inability to manage in a positive, non-condescending manner and her perceived deficiencies in "people development" skills.

      The record evidence in this case is significant and compelling. No reasonable factfinder could conclude that Furka was terminated due to her race. Far from presenting evidence to contradict the core facts upon which the employer relies, as required by *Kautz*, Plaintiff actually concedes the existence of the vast majority of those facts, including the existence of poor

evaluations from her subordinates, poor relationships with other departments, a harsh or "toxic" management style that created a "culture of fear" and at least partial responsibility for errors in the Clery Act reporting. There is no factual basis to support a reasonable inference of any racial component to the evaluation, as many of the complaints came from other caucasian employees and Furka, a caucasian, was replaced by a caucasian. Notably, the staff evaluations were completed prior to Dr. Humphrey having been employed by the University. Dr. Humphrey then confirmed the common themes articulated in those evaluations through her own observations and the additional complaints she received about Furka. At most, Furka subjectively disagrees with Humphrey's evaluation of her performance and points out a few areas in which Humphrey might have provided more explicit supervision and guidance. The fact that Dr. Humphrey may have had different expectations than Dr. Daniel is irrelevant. In summary, Plaintiff has wholly failed to cast doubt on Dr. Humphrey's decisional credibility and cannot demonstrate any implausibilities or inconsistencies in Defendant's proffered non-discriminatory reasons for terminating her employment. An appropriate order follows.

                                                       McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH M. FURKA, | ) |
| | ) |
| Plaintiff, | )  2:06-cv-875 |
| v. | ) |
| | ) |
| UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, | ) |
| | ) |
| Defendant. | ) |

## ORDER OF COURT

In accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION FOR SUMMARY JUDGMENT *(Document No. 14)* filed by Defendant University of Pittsburgh is **GRANTED**. The clerk shall docket this case closed.

SO ORDERED this 25th day of January, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Joel S. Sansone, Esquire
Email: joelsansone03@msn.com

Pamela L. Connelly, Esquire
Email: pwc4@pitt.edu